USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/19/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAURA J. BOWER,

Plaintiff,

v.

SHERATON OVERSEAS MANAGEMENT CORPORATION and SHERATON OVERSEAS MANAGEMENT CORPORATION d/b/a SHERATON GRAND BAHAMAS RESORT AT OUR LUCAYA

Defendants.

07 Civ. 2348 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, U.S.D.J.

Plaintiff Laura J. Bower brings this diversity action for negligence against Defendants Sheraton Overseas Management Corporation and Sheraton Overseas Management Corporation doing business as the Sheraton Grand Bahamas Resort at Our Lucaya, alleging they are responsible for injuries she sustained when she slipped and fell on a sheet lying upon a staircase in Defendants' hotel. Defendants now move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. For the reasons below, the motion is GRANTED.[1]

[1] The Court has considered the following submissions (continued on next page)

## I. BACKGROUND

On March 26, 2004, Plaintiff and four friends traveled to the Bahamas for a vacation. (McCallion Aff. Ex. C., Deposition of Laura J. Bower taken February 5, 2008 ("Bower Dep.") 27:17-24; 32:2-23.) They had arranged to stay at the Sheraton Grand Bahamas Resort at Our Lucaya ("the Resort"). (Id. 34:5-16.) After Plaintiff checked in at the main desk in the lobby, the concierge directed her to go down a short stairway to get to an elevator that would take her to her room. (Id. 42:25-43:9.) Two of her traveling companions accompanied Plaintiff to the stairway, which consists of eight steps, each approximately 46 inches wide, with handrails on either side. (Id. 40:10-21; McCallion Aff. ¶ 21.)

At her deposition, Plaintiff testified that she noticed a white sheet lying on the stairs as she approached

---

(continued from previous page)
(including any attached exhibits) in resolving this motion: Plaintiff's Complaint ("Compl."); Defendant's Amended Answer ("Answer"); Defendant Sheraton's Memorandum of Law in Support of Summary Judgment ("Def. Mem."); Plaintiff's Memorandum of Law ("Pl. Mem."); The Sheraton's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment ("Reply"); Defendants' Local Rule 56.1 Statement ("Def.'s 56.1 Stmt."); Affidavit of Gail K. McCallion, sworn to June 12, 2008 ("McCallion Aff."); and McCallion's Reply Affidavit in Further Support of Defendant's Motion for Summary Judgment, sworn to July 15, 2008 ("Reply Aff.").

them. (Bower Dep. 52:4-11; 60:8-10.) The sheet was molded to the stairway so that it conformed to the shape of the stairs. (Id. 58:18-59:2.) Plaintiff also observed that although the sheet blanketed most of the steps, there was an uncovered portion about twelve inches wide that ran the entire length of the left side of the stairway. (Id. 57:6-58:10.) She began to walk down the middle of the stairs on the portion covered by the sheet. (Id. 59:16-60:4.) She did not use the handrails because she "didn't need to." (Id. 62:23-63:9.) Plaintiff slipped and fell on the third step, thereby injuring her back. (Id. 61:8-9; 85:9-16.)

Plaintiff also testified that her friends had already begun to descend the stairs when she fell, but neither of them lost her footing. (Id. 45:4-15; 55:22-56:5.) Although the friends were the only other witnesses to the fall, the parties have stipulated that they will not offer evidence either in connection with the instant motion or at trial. (McCallion Aff. Ex. O.)

Because Plaintiff did not submit a Rule 56.1 statement, she is deemed to have admitted to the facts contained in that of the Defendants. See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998). In pertinent part, Plaintiff thus admits that:

(1) she "was fully aware of the sheet's presence." (Def. 56.1 stmt. ¶ 7.)

(2) she "was aware of available alternatives to walking on the sheet." (Id. ¶ 8.)

(3) Defendants "did not create the condition, that is, the sheet being on the stairs." (Id. ¶ 9.)

(4) The Defendants had neither constructive nor actual notice that the sheet was on the stairs. (Id. ¶ 10.)

Plaintiff initiated this action on March 21, 2007, alleging that her fall and resulting injury were the result of Defendants' negligence. (Compl. ¶ 15.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A factual dispute is material only if it could affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is no genuine issue where "a rational trier of fact [could not] find for the non-moving party." Matsushita Elec. Indus. Co., LTd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "bears the initial responsibility informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If it satisfies this burden, the non-movant must then come forth with evidence showing there are factual issues that must be resolved at trial. McDonald v. Gonzales, No. 7:05-CV-55, 2007 WL 951445, at * 2 (N.D.N.Y. March 27, 2007); see also Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Although the Court must "resolve all ambiguities and draw all reasonable inferences from the submitted materials in a light most favorable to the non-moving party," neither conclusory allegations nor unsubstantiated speculation will withstand a summary judgment motion. McDonald, 2007 WL 951445, at * 2.

B. Choice of Law

Plaintiff correctly asserts that Bahamian law applies to this dispute. (Pl. Mem., 3.) A federal district court sitting in diversity must apply the conflict-of-laws rules from the state in which it sits.[2] See Cantor Fitzgerald

[2] Diversity jurisdiction exists because Plaintiff resides in Florida and Defendants are Delaware corporations with principal places of business in the New York. (Compl. ¶ 3.)

Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002). Under New York's choice of law jurisprudence, the law of the jurisdiction having the greatest interest in the litigation controls. See Softel, Inc. v. Dragon Medical and Scientific Commc'ns, Inc., 118 F.3d 955, 967 (2d Cir. 2002). Determining which forum has the greater interest entails inquiries as to (1) what and where the significant contacts are and (2) whether the purpose of the law is to regulate conduct or allocate loss. See Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521 (N.Y. 1994). Furthermore, "where the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." Krock v. Lipsay 97 F.3d 640, 646 (2d Cir. 1996).

This case is no exception. The law at issue is negligence, which is clearly conduct-regulating, and the locus of the tort was in the Bahamas, where Plaintiff slipped and fell. (Reply, 4.) I also note that although Defendants' moving brief is premised entirely on New York negligence law, their reply brief states that they "[do] not dispute the applicability of Bahamian law." (Reply at 3.)

C. Bahamian Negligence Law

Bahamian courts apply English common law to tort claims not governed by Bahamian statute. (See Pl. Mem. Ex. B, at 2.); Morse v. Sun Int'l Hotels Ltd., No. 98-7451-Civ., 2001 WL 34874967 *7 (S.D. Fla. Feb. 26, 2001)("Bahamian law is derived from English common law.") At common law, a premises owner owed a duty to "take reasonable care to prevent damage from unusual danger." Tomlinson v. Congleton Borough Council, (2003) U.K.H.L. 47, [2004] 1 AC 46 (quoting Indermaur v. Dames, (1866) L.R. 1 CP 274, 288). In Cox v. Chan, the Bahamas Supreme Court articulated a three-part test for determining whether a premises owner is liable for breaching this duty with respect to an invitee.[3] [1991] BHS J.No. 110; No. 7555 of 1988, at ¶ 19. First, the court must determine if the condition at issue constituted an unusual danger. Id. If so, it must then decide whether the owner used reasonable care to keep the invitee from being injured by the condition. Id. Finally, the court must consider the reasonableness of the care taken by the invitee to

[3] The Sheraton does not dispute that Plaintiff was an invitee on the Defendant's premises at the time of the incident. (Pl. Mem. at 10.)

determine if a reduction for contributory negligence is warranted.[4] Id. at ¶¶ 18, 19.

With respect to the last inquiry, Plaintiff essentially concedes that she did not exercise reasonable care for her own safety. (Def. Mem., 13.) At common law, this concession would bar her claim altogether. Cox, BHS J.No. 110, at ¶ 18. However, the Bahamian Contributory Negligence Act of 1961 altered the legal landscape in this regard: "[s]ince that time contributory negligence in tort actions only operates to reduce the amount of damages which a person found liable in negligence would have to pay to a plaintiff who was also negligent." Id. at ¶ 18. Plaintiff therefore contends that her own negligence "does not serve to bar her claim altogether" and she is entitled to a trial on the issues of whether the sheet posed an unusual danger, the Defendants breached their duty of care, and (although she does not mention it) the degree to which she was responsible for her own injury. (Def. Mem. at 13.)

This argument assumes that Plaintiff was not solely responsible for her fall. Because I conclude on the basis of undisputed evidence that the sheet was not an unusual

---

[4] Under Bahamian law, contributory negligence is the equivalent of comparative negligence under American law.

danger and the Defendants did not breach their duty of care, I need not decide whether this was indeed the case.

i. Unusual Danger

Under Bahamian law, determination of whether a given condition constitutes an unusual danger depends on whether the plaintiff was aware of it. For example, in Cox, the court assessed whether a ramp to a shop entrance constituted an unusual danger to the plaintiff, who had slipped on it. The court first noted the distinction at English common law between "ordinary accidents, such as falling down the stairs, which ought to be imputed to the carelessness or misfortune of the sufferer, and accidents from unusual, covert danger such as that of falling down into a pit." Cox, BHS J.No. 110, at ¶ 31 (quoting Indermaur v. Dames, (1867) [1861-73] All E.R. 15 Rep., 288 (emphasis added). The court then found that the ramp "was not an unusual danger for it was clearly visible to everyone who visited the shop . . . and . . . the plaintiff had full knowledge of the existence and presence of the ramp. . . . ." Id. at ¶ 48. Similarly, in Stowell v. Railway Executive, an English case cited by Plaintiff, the court noted that "[i]f the thing is obvious it is not unusual to the person who has seen it, but it may be unusual to a person who has not seen it even though he

could have seen it if acting reasonably and taking reasonable care for his own protection." [1949] 2 All E.R. 193, at 196 (K.B.). Thus, by the logic of both cases, what may otherwise constitute a dangerous condition is not "unusually dangerous" if plaintiff knew of it.[5]

One does not ordinarily expect to find a sheet on a hotel stairway. Had Plaintiff not seen it before she fell, it would be difficult to deny that the sheet constituted an unusually dangerous condition with respect to her. However, that did not happen here. Plaintiff admittedly observed the sheet as she approached the stairs. (Bower Dep. 52:4-11; 60:8-10.) She was also aware of alternatives to stepping on it (such as using the uncovered portion of the stairs or taking the nearby elevator) but neither availed herself of them nor used the handrails. (See Def. 56.1 stmt. ¶ 8; McCallion Aff. ¶ 22.)

---

[5] Plaintiff argues that even a condition of which she was aware can serve as the basis for liability here. In support of this contention, Plaintiff cites Bunker v. Charles Brand & Son Ltd., in which the court found that the "free-running rollers" around drilling machinery and upon which plaintiff slipped were a "hazard" even though he saw them. [1969] 2 Q.B. 480, at 484. However, the Bunker court's holding was predicated on an English Statute, the Occupier's Liability Act, rather than the common law applicable to the Bahamas. Furthermore, the court's finding was in part based on its conclusion that the defendant had "created the particular danger at issue," which Plaintiff has admitted was not the case here. Id. at 849; see (Def. 56.1 stmt. ¶ 9.)

Under these circumstances, as a matter of Bahamian law, the sheet did not constitute an unusual danger to her.

ii. Defendant's Duty of Care

Because she was aware of the sheet's presence on the stairwell, Plaintiff also cannot show that the Defendants breached their duty of care. The Cox court defined this duty as

> not an absolute duty to prevent any damage to the plaintiff but a lesser one of using reasonable care to prevent damage to the plaintiff from an unusual danger of which the defendant knew or aught to have known and . . . of which the plaintiff did not know or of which he could not have been aware.

Cox at ¶ 21. Plaintiff admits that the Defendants had neither actual nor constructive notice of the sheet's presence in the stairwell and did not put it there. (Def. 56.1 Stmt. ¶¶ 9,10; McCallion Aff. ¶¶ 16, 24, 25, 35, 39, 40). Furthermore, as noted above, Plaintiff was aware of the sheet before she set foot on it. On these facts alone, Cox dictates that Defendants breached no duty.

Plaintiff argues that under Bahamian law, she "need only establish that she fell" on the sheet before the burden shifts to defendants to "explain how the accident happened or to provide substantive evidence as to the state of the stairway and the watch that was kept on it

immediately before the accident." (Def. Mem., 11.)(emphasis in original). Neither of the cases Plaintiff cites supports this proposition. Stowell makes no mention of the purported burden-shifting regime. [1949] 2 All E.R. 193. Turner v. Arding & Hobbs Ltd. is also inapposite. [1949] 2 All E.R. 911. The Turner court, in finding defendant shopkeeper liable for injuries plaintiff sustained after slipping on vegetable matter on the shop floor, stated that "if an unusual danger is present of which the defendant was not aware . . . the onus of proof is on the defendants to explain how it was that the accident happened." Id. at 912. Thus, under Turner, the burden shift is triggered only where a plaintiff is unaware of the danger.

In any event, Defendants have submitted uncontroverted circumstantial evidence that they took reasonable care to prevent Plaintiff's injury. At the time of the incident, a security officer named Don Forbes was assigned to patrol the area including the staircase on which she fell. (McCallion Aff. ¶ 23; Ex. L, at 17-18). Defendants offer no evidence from Mr. Forbes because he has left their employ and his whereabouts are unknown. (Id. ¶ 23). However, Forbes was expected to report an anomaly such as a sheet lying on the lobby staircase had he seen one. (McCallion Aff. Ex. M, at 9). The Resort's records reflect

no such report. (McCallion Aff. ¶ 25.) Nor do they indicate that any other guest complained about a sheet on the stairs. (Id.) Finally, Plaintiff did not report her injury to the Resort until more than an hour and a half after she fell. (Id. ¶ 32.) An investigator, Arabella Roker, "went immediately to the accident site and observed the stairway was clear." (Id. ¶ 39; Ex. N at 9-10.)

At the very least, Defendants' evidence indicates that the Resort had a system in place to prevent injuries of the type sustained by Plaintiff. Had Plaintiff or her friends reported the fall earlier, Resort personnel may have found the sheet and had some chance of ascertaining how it got there. Thus, absent any contrary evidence from the Plaintiff, even assuming the sheet qualified as an unusually dangerous condition, no reasonable jury could find that Defendants breached their duty to take reasonable care to prevent Plaintiff's injury.

III. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment [dkt. no. 14] is GRANTED. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED:

Dated: New York, New York
March 19, 2009

LORETTA A. PRESKA, U.S.D.J.